UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ZOBMONDO ENTERTAINMENT, LLC, RANDALL HORN,

Plaintiffs/Counter-Defendants,

v.

FALLS MEDIA, LLC, JUSTIN HEIMBERG, DAVID GOMBERG

Defendants/Counter-Plaintiffs.

CASE NOS.: CV 06-3459 ABC (JTLx); CV 07-571 ABC (JTLx)

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court are two motions in two separate, consolidated copyright and trademark infringement cases arising from the same factual scenario. In one case, Falls Media, LLC, et al. v. Zobmondo Entertainment, LLC, et al., CV 07-571 ABC (JTLx), Plaintiffs Falls Media, LLC, Justin Heimberg, and David Gomberg (collectively "Falls Media") have brought trademark infringement and unfair competition claims and Defendants Zobmondo Entertainment, LLC and Randall Horn (collectively "Zobmondo") filed a motion on January 10, 2008 for summary adjudication trademark infringement claims and Zobmondo's own counterclaim for trademark cancellation. In the other case, Zobmondo Entertainment, LLC, et al. v. Falls Media, LLC, et

al., CV 06-3459 ABC (JTLx), Zobmondo has alleged trade dress, copyright and unfair competition claims and Falls Media filed a motion on April 7, 2008 for summary judgment. The Court heard arguments from the parties on Tuesday, June 10, 2008. After considering the extensive briefs of the parties, the evidence submitted, and the arguments presented, the Court GRANTS Zobmondo's motion for summary judgment and Zobmondo's cancellation counter-claim in CV 07-571 ABC (JTLx), and GRANTS Falls Media's motion for summary judgment in CV 06-3459 ABC (JTLx).

## I. INTRODUCTION AND FACTUAL BACKGROUND

These cases represent the diligent efforts of competing entrepreneurs to create successful board games based on the conversation-starter of "Would you rather . . .?", wherein participants are asked to choose between one of two, sometimes unsavory, alternatives. (Trademark Statement of Undisputed Facts ("Trademark UF") No. 1.)[1] Although the "Would you rather . . .?" concept of dilemmas existed prior to either party's use of the concept, in February 1998, Zobmondo issued the first board game embodying the concept, which was called Zobmondo!! That Crazy "Would You Rather" Game. (Trademark UF No. 9.) Since 1998, Zobmondo has released several other versions of this game, including: (1) Zobmondo!! Would You Rather . . .? the twisted, sick, and wrong version in late 2002; (2) Zobmondo!! Would You Rather . . .? the game

---

[1]The Court will cite to Zobmondo's "Trademark" statement of undisputed facts ("Trademark UF") and Falls Media's genuine issues ("Trademark GI") and Falls Media's "Copyright" statement of undisputed facts ("Copyright UF") and Zobmondo's genuine issues ("Copyright GI") for ease of citation. The Court has considered all objections and responses filed by the parties, and will note where evidence is excluded.

of wacky & mind-boggling questions in 2003; (3) Zobmondo!! You Gotta Be Kidding, The Crazy Game of "Would You Rather . . .?"; (4) Zobmondo!! Would You Rather . . .? the game of bizarre & mind-boggling questions Pocket Version; and (5) Zobmondo!! Would You Rather . . .? twisted, sick and wrong Late Night. (Id. No. 10.) From 2000 through November 2002, the toy company Hasbro sold Zobmondo's game under the name Zobmondo!! The Outrageous Game of Bizarre Choices, and without reference to the phrase "Would You Rather." (Trademark GI Nos. 10, 57.)

In 1997, Heimberg and Gomberg, the two individuals who eventually formed Falls Media[2], published a book entitled Would You Rather . . .? Over 200 Absolutely Absurd Dilemmas to Ponder. (Id. No. 11.) That book garnered the following sales figures between 1997 and 2002:

1997: 15,445 units, $9,373.29 in net sales
1998: 24,649 units, $14,055.70 in net sales
1999: 15,300 units, $9,205.20 in net sales
2000: 12,693 units, $9,079.36 in net sales
2001: 4,044 units, $4,273.29 in net sales
2002: 4,179 units, $3,026.49 in net sales

(Declaration of Gregory Korn ("Korn Decl."), Ex. Q at 1048-50.) Over the course of these five years, Falls Media sold 76,310 copies for net sales of $49,013.33. Heimberg and Gomberg published a sequel to this book called Would You Rather 2, Electric Boogaloo in 1999, which garnered the following sales between 1999 and 2002:

1999: 13,068 units, $9,205.20 in net sales

---

[2]Although Heimberg and Gomberg did not form Falls Media until October 2004, for ease of reference, the Court will use the name "Falls Media" as short-hand for either Heimberg and Gomberg or Falls Media.

2000: 1,257 units, $9,079.36 in net sales

2001: 723 units, $4,273.29 in net sales

2002: 0 units

(Id. at 1050-52.)[3] Over the course of three years, Falls Media sold 15,048 copies for net sales of $22,557.85.[4] In 1997, Dutton Plume, Falls Media's publisher of its first book, spent $18,000 on nationwide promotion of this book, and each year between 1997 and 2002, Falls Media spent $155 on advertising. (Trademark UF No. 30.)

On July 31, 1997, Heimberg and Gomberg filed an intent-to-use application with the United States Patent and Trademark Office ("PTO") for the phrase "Would you rather . . .?" in Class 16 (books) and Class 28 (board games). (Id. No. 13.) The PTO issued a Notice of Allowance on January 8, 2002 for this application. Before that time, Falls Media had not introduced a board game into the market under the "Would you rather . . .?" mark. (Id. Nos. 17, 18.) After issuance of the Notice of Allowance, Heimberg and Gomberg requested and received five extensions from the PTO to file a Statement of Use demonstrating that they had introduced a "Would you rather . . .?" board game into the

---

[3]Falls Media now disputes these facts that were given in its own interrogatory responses, claiming instead that the retail price of these books was $9.99, creating revenues upwards of $900,000. (Trademark GI Nos. 25-28.) Heimberg and Gomberg's literary agent testified that calculating revenue based on $9.99 is unreliable because it fails to account for retailers selling products at discount prices. (Declaration of Lawrence Y. Iser ("Iser Decl."), ¶ 3, Ex. B at 11-12.) Falls Media cannot defeat summary judgment by now offering evidence to contradict its own interrogatory responses previously provided to Zobmondo. The Court relies on Falls Media's interrogatory responses.

[4]Falls Media issued other products after 2002 bearing the "Would you rather . . .?" mark, but for purposes of this Order, the sales, marketing, and promotion of those products is irrelevant as discussed infra.

market, and then filed a Statement of Use in December 2004 indicating that they had issued a game into the market bearing the "Would you rather . . .?" mark. (Id. No. 19.) Since issuance, this game has sold 1,323 copies. (Id. No. 29.) Eventually on July 19, 2005, the PTO issued Registration No. 2,970,830 for the mark "Would you rather . . .?" as an "inherently distinctive" mark. (Trademark GI No. 35.)

According to Falls Media, its game revolves around the element of prediction - players would need to guess or predict others' answers. (Copyright UF No. 5.) After Zobmondo issued its first game in 1998, Falls Media hired Berk Kent, a graphic designer, to design their game. (Id. No. 9.) During the design process, Kent did not see the game board of Zobmondo's 1998 version of the game. (Id. No. 10.)[5] Tom Schirtz, also a graphic designer, finalized the design of Falls Media's game board, and was told to refer to the colors presented in Fall Media's books in developing the color scheme for the game. (Id. No. 11.) Schirtz was aware of Zobmondo's 1998 game and was frequently instructed, including in an email from Gomberg, to "make sure we don't come anywhere near [Zobmondo]," so much so that he became "annoyed" with the constant reminders. (Id. No. 12.) In other emails, Falls Media instructed Schirtz to change the game box colors from yellow to green and pink, colors that were "zobmondo-ish." (Id.)[6] Schirtz explained in another email that "I always took it as make sure we don't come anywhere near what this guy [Horn] does." (Id. No. 13.)

---

[5]The parties dispute this fact, but, given the Court's conclusions below, Kent's level of access to the game board from Zobmondo's 1998 version is not important.

[6]The final game box Falls Media issued into the market does not contain any pink.

Ultimately, Falls Media began distribution of its board game in the Fall of 2004. (Id. No. 14.)

Randall Horn, founder of Zobmondo, knew about Falls Media's first book bearing the "Would You Rather . . .?" mark in 1997. (Trademark GI No. 39.) In September 1997, within only months of Heimberg and Gomberg's PTO filing, Horn filed two intent-to-use applications to obtain the exclusive rights over the two marks: WOULD YOU RATHER and THAT CRAZY "WOULD YOU RATHER" GAME. (Id. No. 40.) These applications were ultimately rejected because of Falls Media's priority filing. (Id.) In late 2002 and early 2003, after Hasbro stopped issuing Zobmondo's game, Zobmondo produced and issued a version of its game called Zobmondo!! Would you rather . . .?, on which the name "Zobmondo" was printed in smaller font and the phrase "Would you rather . . .?" was more prominently displayed on the box. (Trademark GI No. 61.)

Zobmondo filed a federal copyright registration for the game board from its 1998 game, which was issued on May 11, 1998 with registration number TX 4-696-274. (Id. No. 19.) Similarly, Zobmondo obtained Registration No. VA 1-288-452 on April 9, 2004 for the trade dress for its 2002 Zobmondo!! Would you rather . . .? the twisted, sick and wrong version of its board game, and Registration No. VA 1-288-452 on April 26, 2004 for the trade dress for its 2003 Zobmondo!! Would you rather . . .? the game of wacky & mind boggling questions version of its game. (Id. Nos. 36, 37.) Zobmondo has alleged copyright infringement of the game board from its 1998 version of its "Would you rather . . .?" game and of its trade dress embodied in its

2002 and 2003 versions.[7]

In 2006, Zobmondo filed suit in the Central District of California, alleging claims against Falls Media for trade dress infringement under 15 U.S.C. § 1125(a), common law trade dress infringement, copyright infringement, and unfair competition. Falls Media has moved for summary judgment on all of these claims. Falls Media filed an action in district court for the Southern District of New York, which was transferred to the Central District of California in 2007, alleging claims of, inter alia, trademark infringement under the Lanham Act, 15 U.S.C. § 1114, trademark infringement under 15 U.S.C. § 1125(a), and common law trademark infringement. Zobmondo counter-claimed for cancellation of Falls Media's registration of the mark "Would you rather . . .?" Zobmondo has moved for summary adjudication of these claims.

## II. LEGAL STANDARD

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. See Calderone v. United States, 799

---

[7]Although Zobmondo originally maintained a copyright infringement claim over game rules, it has since abandoned that claim. Similarly, although Zobmondo alleges infringement of game cards, it declines to defend this claim against summary judgment. Therefore, the Court GRANTS summary judgment on these two claims.

F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). This means that, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [that party's] favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In other words, the moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings . . . [T]he adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The evidence of the nonmovant is to be believed, and all

justifiable inferences are to be drawn in favor of the nonmovant. Id. at 248. However, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." Id. at 252.

**III. DISCUSSION**

**A. Zobmondo's Motion for Summary Judgment on Falls Media's Trademark Infringement Claims and Zobmondo's Counter-Claim to Cancel Falls Media's Trademark Registration**

To establish a claim for trademark infringement, the plaintiff must establish that the defendant "is using a mark confusingly similar to a valid, protectable trademark" of the plaintiff's. Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999). Summary judgment in trademark disputes is generally disfavored. See, e.g., Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008) ("Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena."); Interstellar Starship Servs., Ltd. v. Epix, Inc., 184 F.3d 1107, 1109 (9th Cir. 1999) (same). On the issue of validity, however, courts have routinely granted summary adjudication. See, e.g., Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902 (9th Cir. 1995) (affirming grant of summary judgment on validity of trademarks); 555-1212.com, Inc. v. Communication House Int'l, Inc., 157 F. Supp. 2d 1084 (N.D. Cal. 2001) (same).[8]

---

[8]The Court is, of course, cognizant of the Ninth Circuit's statements in Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc. that "[w]hether a mark is generic is a question of fact," and "the question of secondary meaning is one of fact." 419 F.3d 925, (continued...)

In trademark infringement actions, "[t]he plaintiff bears the ultimate burden of proof[.]" Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928 (9th Cir. 2008). The "threshold issue" in an infringement action is the validity of the mark, an issue for which the plaintiff bears the burden of proof. Id. A plaintiff who obtains a federally registered mark, however, enjoys an initial presumption of validity, which discharges the plaintiff's initial burden of proof. See id. at 927 ("When a plaintiff pursues a trademark action involving a properly registered mark, that mark is presumed valid, and the burden of proving that the mark is generic rests upon the [moving party]."); Filipino Yellow Pages, Inc. v. Asian Journal Pubs., Inc., 198 F.3d 1143, 1146 (9th Cir. 1999) ("In cases involving properly registered marks, a presumption of validity places the burden of proving genericness upon the [moving party]."); see also 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark[.]"). The defendant may rebut this presumption by a preponderance of evidence that the mark is not protectable. See Vuitton Et Fils S.A. v. J. Young Ents., 644 F.2d 769, 775-76 (9th Cir. 1981). Once the defendant carries this burden, the presumption evaporates and the plaintiff is then required to demonstrate that the mark is protectable. See 555-1212.com, 157 F. Supp. 2d at 1089.

1. The "Would you rather . . .?" Mark Is Descriptive.

At the first step of the Court's analysis, the Court must determine whether Zobmondo has presented sufficient evidence to

---

[8](...continued)
929-30 (9th Cir. 2005). These statements, however, do not relieve the opposing party from producing evidence to preclude summary judgment under settled summary judgment principles.

overcome Falls Media's presumption of validity of its registered mark. To be clear, the Ninth Circuit requires that Zobmondo present only a preponderance of evidence to overcome the presumption, not clear and convincing evidence. See Vuitton, 644 F.2d at 775-76.

The Ninth Circuit recognizes five categories of trademarks that fall along a sliding scale of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. Yellow Cab, 419 F.3d at 927. "The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally 'serve[] to identify a particular source of a product . . . .'" Id. (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)).[9] A suggestive mark "suggests the type of product being sold without describing it," and some inferential leap is required to understand any product reference. See Kyjen Co. v. Vo-Toys, Inc., 223 F. Supp. 2d 1065, 1070 (C.D. Cal. 2002). A descriptive mark, in contrast, "describes the product to which it refers or its purpose." Self-Realization, 59 F.3d at 910. A descriptive mark is protected only if it has acquired "secondary meaning" and "serves to identify the goods of a single merchant." Bada Co. v. Montgomery Ward & Co., 426 F.2d 8, 11 (9th Cir. 1970).

The line between suggestive and descriptive marks is elusive:

> Although the distinction between descriptive and suggestive marks may be inarticulable, several criteria offer guidance. The primary criterion is the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product. [citation] If the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness.

---

[9]Falls Media concedes, as it must, that its mark "Would you rather . . .?" is neither arbitrary or fanciful, so only the first three types of marks are at issue here.

Self-Realization, 59 F.3d at 911 (internal citations and quotations omitted). Relevant for the Court's purposes here, a descriptive mark can embody only one aspect or attribute of a product and need not necessarily describe the entire product. See Papercutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 563 (2d Cir. 1990) (finding the term "Papercutter" is descriptive of work done by the plaintiff). Thus, courts have concluded that the following marks are descriptive:

- "Micro-precision" as used for wheel weights and balancers, see Bada, 426 F.2d at 11;
- "Powercheck" as used for batteries with a feature to check the remaining power, see Ideal World Marketing, Inc. v. Duracell, Inc., 15 F. Supp. 2d 239, 244 (E.D.N.Y. 1998);
- "SnakeLight" as used for a flexible light, see Black & Decker Corp. v. Dunsford, 944 F. Supp. 220, 225-26 (S.D.N.Y. 1996);
- "555-1212.com" as used for a website providing telephone directory information, see 555-1212.com, 157 F. Supp. 2d at 1089-90; and
- "Self-Realization" as used for books, magazines, and audio and video recordings, related to spiritual and Yoga services, see Self-Realization, 59 F.3d at 910-11.

In contrast, courts have found these marks suggestive:

- "360°" as used for athletic shoes, see Tanel Corp. v. Reebok, Int'l, Ltd., 774 F. Supp. 49, 53 (D. Mass. 1990);
- "Bungee" as used for stretchable dog toys, see Kyjen Co., 223 F. Supp. 2d at 1071; and
- "Passion" as used for perfumes, see Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L., 673 F. Supp. 1238, 1243-44 (S.D.N.Y. 1987).

The Court begins its analysis by rejecting Zobmondo's claim that "Would you rather . . .?" is generic. Zobmondo primarily relies on the Ninth Circuit's decision in Anti-Monopoly, Inc. v. General Mills Fun Group, Inc., 684 F.2d 1316 (9th Cir. 1982), but that case is does not necessarily compel a conclusion that the "Would you rather . . .?"

mark is generic. In that case, the court addressed two issues: first, whether the mark "Monopoly" was generic at the time it was registered; and second, whether the trademark over the famous board game "Monopoly" had lost its "primary significance of the term in the minds of the consuming public" because it denoted "the product but not the producer." Id. at 1319, 1321. On the first point, the court concluded that "Monopoly" was not generic at the time of its registration, despite evidence of prior use of the term in connection with board games. Id. at 1319-21. The second issue, which Zobmondo uses to argue that Falls Media's mark is generic, turned on the specific marketing history of the Monopoly game and whether the producer had successfully associated the Monopoly mark with the company, not just the game. Id. at 1321. The court concluded that it did not: "To us, the evidence overwhelmingly shows that [the producer] very successfully promoted the game of Monopoly, but that in doing it they so successfully promoted 'Monopoly' as 'the name of the game,' that it became generic in the sense in which we use that term in trademark law." Id. at 1323.

Since Falls Media's "Would you rather . . .?" board game lacks the venerable marketing history of Monopoly, the first question addressed in Anti-Monopoly - whether the mark was generic at the time of registration - might be relevant to the Court's inquiry here, but the second is not. Anti-Monopoly does not compel a finding that the "Would you rather . . .?" mark is generic without further inquiry.[10]

---

[10]In any event, Zobmondo all but concedes in its motion that the "Would you rather . . .?" mark is at least descriptive. (Trademark Mot. at 24:10-16.) It retreats somewhat from this position in its reply to argue that Anti-Monopoly supports a finding of genericness, (continued...)

The true dispute between the parties is whether "Would you rather . . .?" is suggestive or descriptive of the game Falls Media has produced. The distinctiveness label in this case - as in most cases - is critical because a suggestive mark relieves Falls Media of the heavy burden of proving secondary meaning. See PaperCutter, 900 F.2d at 564. "The line between descriptive and suggestive marks is quite a difficult one to draw and new entrants to product markets often stray quite close to it." Id.[11] As a matter of law, the Court finds that Zobmondo has carried its initial burden of demonstrating that the mark is merely descriptive, not suggestive.

At the outset, the Court emphasizes that a descriptive mark need not describe an entire product; it may describe some part, feature, or attribute and still be descriptive. See In re Styleclick.com Inc., 57 U.S.P.Q.2d 1445, 1447 (T.T.A.B. 2001) ("It is not necessary that a term describe all of the properties or functions of the goods and/or services in order for it to be considered merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute

---

[10](...continued) but, again, to the extent this case controls the result of the Court's distinctiveness inquiry, the Court will follow it.

[11]One district court pinpointed the problems courts routinely face when attempting to categorize a mark:

> Compounding the difficulty of categorization is that a mark's classification may differ depending on the nature of the product. For example, "the word 'apple' would be arbitrary when used on personal computers, suggestive when used in 'Apple-A-Day' on vitamin tablets, descriptive when used in 'Tomapple' for combination tomato-apple juice and generic when used on apples."

Black & Decker Corp. v. Dunsford, 944 F. Supp. 220, 225 (S.D.N.Y. 1996) (quoting J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 11.22 (3d ed. 1996)).

or feature about them."); see also Bada, 426 F.2d at 11 (finding "Micro-precision" descriptive of wheel balancers); Ideal World Marketing, 15 F. Supp. 2d at 244 (finding "Powercheck" descriptive of batteries with a feature to check remaining charge). Moreover, the descriptiveness of the mark cannot be considered in a vacuum or by considering "whether consumers could guess what the product and/or service is from consideration of the mark alone . . . ." Styleclick.com, 57 U.S.P.Q.2d at 1447.

The mark "Would you rather . . .?", while linguistically incomplete, directly conveys an attribute of Falls Media's game, consisting of a series of questions, all of which begin, "Would you rather . . .?". Perhaps most telling on this point is the testimony of Falls Media's own literary agent, Jay Mandel, who testified that the title of Falls Media's books described the main concept:

> Q: Do you have an opinion as to whether or not Would You Rather was a good title for this manuscript?
>
> A: I recall thinking it was seemingly an utterly obvious title.
>
> Q: And why is that?
>
> A: Because it was a clear explanation of the content of the book.

(Declaration of Lawrence Y. Iser ("Iser Decl.") ¶ 3, Ex. B at 42:14-21.)[12] Similarly, Falls Media's sales agent, Robert Fuhrer, testified that "Would you rather . . .?" described the game. (Id. ¶ 2, Ex. A at 30:23-31:6.) In fact, Fuhrer testified that Zobmondo's game likely

---

[12]The deposition transcript from Mandel's deposition, as well as most other deposition transcripts submitted by both parties, lack the reporter's certification and are therefore not properly authenticated. See Orr v. Bank of America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002). Neither party has objected, however, and the Court deems any objections waived.

failed at Hasbro because the company refused to use the phrase "Would you rather . . .?" to denote the game, rather than "Zobmondo," which told the purchaser nothing about the game. (Id. at 182:17-184:7.) James Pressman, the president of Pressman Toy Company, who optioned Falls Media's "Would you rather . . .?" board game, testified:

> Q: Did you have an opinion as to whether or not "Would You Rather . . .?" would be a good name for the product, had you decided to exercise the option and put it out?
>
> A: I think the name was good.
>
> Q: Why?
>
> A: Because it gave you a good idea of what the game was all about . . . .
>
> Q: In other words, just to make sure I understand what you're saying, you thought "Would You Rather . . .?" would be a good name for this product because it describes how the game is played?
>
> A: Yes.

(Id. ¶ 4, Ex. C at 36:11-37:6.) Zobmondo also produced an email from Gomberg suggesting that the "Would you rather . . .?" is descriptive because it prompted purchase decisions by consumers familiar with the "Would you rather . . .?" concept. (Supplemental Declaration of Gergory Korn ("Supp. Korn Decl.") ¶ 8, Ex. F ("From our experience with impulse buys, and particularly the Would you rather . . . ? concept, most people that make the purchase do it because they're familiar with the concept – as opposed to the actual game play or content. Thus consumers who see a $20 Would you rather . . . ? vs. a $30 [] Would you rather . . . ? would, in all likelihood, purchase the less expensive item.").)

Zobmondo also offered evidence that the concept of "Would you rather . . . ?" predated either company's creation of a game embodying the idea, supporting the conclusion that the term "Would you rather .

. .?" merely describes the main attribute of the game. For example:

- Dr. Seuss published a book in 1975 called, Would You Rather Be a Bullfrog?, in which the reader is presented with a series of "Would you rather . . .?" questions (Copyright UF No. 3);
- In 1978, John Burningham published a book entitled Would You Rather . . ., containing illustrated "Would you rather . . .?" scenarios for children (Id. No. 4);
- Doug Fields published a book in 1995 entitled Would You Rather . . .? 465 Provocative Questions To Get Teenagers Talking and a 2004 sequel entitled More Would You Rather? Four Hundred and Sixty-five More Provocative Questions To Get Teenagers Talking, both of which present "Would you rather . . .?" questions (Id. No. 5);
- Conn McQuinn published a 1998 book entitled Would You Rather? 150 Wild & Wacky Choices, featuring 150 "Would you rather . . .?" scenarios (Id. No. 6); and
- William Steig published a book entitled Which Would You Rather Be?, which presents similar "Would you rather . . .?" scenarios (Id. No. 7).[13]

Falls Media offers testimony of its expert, Philip E. Orbanes, that: "(1) there was never a pre-existing game or generic reference to a game called 'Would You Rather,' and (2) the mark WOULD YOU RATHER . . . ? does not describe FM's game or its features." (Trademark Opp'n at 13:10-13.)[14] On the first point, even if the Court assumes that Orbanes is correct, that conclusion is irrelevant to the distinctiveness inquiry and does not create a genuine issue of fact; the second point is a legal conclusion proper for the Court, not

---

[13]Falls Media objects to the foundation of the comparable works Zobmondo has submitted. Zobmondo has resolved any objections, however, by submitting the actual copyright registrations for these works. The Court can take judicial notice of these official documents. Also, these books are still available for sale on the bookselling website Amazon.com. (Copyright UF No. 8.)

[14]The Court OVERRULES Zobmondo's objection to Falls Media's allegedly late disclosure of the Orbanes report. The Court also OVERRULES Zobmondo's other objections to this report.

expert opinion.

Orbanes relied on his experience in the game industry and standard game reference books such as The New Complete Hoyle, Scarne's Encyclopedia of Games, How to Play, Games for Grownups, Party Games, and Playboy's Party Games, to conclude the "Would you rather . . .?" concept did not exist in game form prior to the parties' games in this case. (Orbanes Report at 6-7.) This is entirely irrelevant. Zobmondo does not argue that a game existed embodying the "Would you rather . . .?" concept, but that a general societal concept of the "Would you rather . . .?" dilemma existed, such that society at large would understand that a game labeled "Would you rather . . .?" embodies this concept. Rather than focus on the existence of this abstract concept, Orbanes focuses - improperly, in the Court's opinion - on prior party games. Yet, even Orbanes would have to concede that many games find their genesis, not in preexisting game concepts, but in movies, television shows, books, and even in pop culture phenomena. That no prior "game" embodied the "Would you rather . . .?" concept does not create a genuine issue over the recognition of the "Would you rather . . .?" concept or its descriptive nature.

Orbanes also improperly reaches the legal conclusion that "Would you rather . . .?" merely "hints at or suggests its playing qualities, but one could not deduce the actual method of play simply from its title, or know for certain the kind of choices that might be offered by the game's standards." (Id. at 8.) See Ideal World Marketing, 15 F. Supp. 2d at 244 n.2 (rejecting expert declaration that "offers a legal conclusion based upon the undisputed facts before the Court, impinges upon the Court's role, would be inadmissible at trial, and is of no probative value on this motion."). Even assuming Orbanes had

the authority to draw this conclusion, as discussed more fully below, "Would you rather . . .?" does far more than "hint" at the game's play; every question given to a player during the game begins with that phrase, and a response is required to move forward in the game play. Second, no case found by this Court or cited by the parties remotely suggests that a descriptive mark must allow the consumer to "deduce the actual method of play simply from its title." To rule otherwise would compel the Court to find marks descriptive only if they embody the most verbose, unwieldy titles, perhaps as long as the game's rules and instructions themselves. This statement also runs contrary to case law finding marks descriptive when they only refer to a feature of a product. See, e.g., Styleclick.com, 57 U.S.P.Q.2d at 1447; Bada, 426 F.2d at 11; Ideal World Marketing, 15 F. Supp. 2d at 244. Third, nothing in the law compels the "Would you rather . . .?" mark to convey to the consumer the types of questions or options in the game. It is enough that the game features "Would you rather . . .?" questions. In short, Orbanes's improper opinion runs contrary to law and would eliminate all but the most obvious marks from the descriptive category.[15]

Even beyond its expert, Falls Media argues that "Would you rather . . .?" is suggestive under the relevant case law. Three different tests are employed to draw the line between descriptive and suggestive marks. The principal test is the "imagination test": "a term is suggestive if 'imagination' or a 'mental leap' is required in order to

---

[15]In rejecting Orbanes's conclusions here, the Court is not weighing this evidence. Rather, as it is required to do, the Court has determined that Orbanes's conclusions are not probative to the questions presented, and thus cannot properly be considered on summary judgment. See Ideal World Marketing, 15 F. Supp. 2d at 244.

reach a conclusion as to the nature of the product being referenced." Filipino Yellow Pages, 198 F.3d at 1147 n.3. For example, the mark "GLEEM" for toothpaste is suggestive because the consumer would have to infer from that term that "gleam" (or its trademarked spelling) means gleaming teeth, and that result is achieved through toothpaste affixed with the "GLEEM" mark. See Papercutter, 900 F.2d at 563. Similarly, the mark "360°" as used for athletic shoes is suggestive "because one must use considerable imagination to remember that 360 is the number of degrees in a circle, connect that circle to movement, and imagine that the mark connotes the ability to pivot in the shoe for a full circle." 555-1212.com, 157 F. Supp. 2d at 1089 (discussing Tanel Corp., 774 F. Supp. at 53).

Falls Media argues that the mark "Would you rather . . .?" requires imagination because the phrase

> does not describe the types of questions, the question format as posing two ridiculous dilemmas, or the fact [that a] consumer 'must choose' one of the ridiculous Hobbesian choices. The mark also does not describe whether a choice, if any, consists of no option, one option, two options, or numerous options. Nor does it indicate whether any option would be positive, neutral, negative, or extremely bizarre. In the context of game play, the mark WOULD YOU RATHER . . .? simply does not describe the manner in which the game is played, the number or types of players, the rules, the object of the game, or the mode of winning.

(Trademark Opp'n at 14:18-15:2.) But these points are all details of the game, none of which compels a conclusion that the mark "Would you rather . . .?" requires imagination to connect it with a board game based on this concept.

Unlike "GLEEM" and "360°", "Would you rather . . .?" requires no imaginative or interpretive leap to understand that this phrase is the main aspect of the game to which it is affixed. In fact, it appears even more descriptive than "SnakeLight" and "Micro-Precision," two