Corp., 35 F.3d 1435, 1442 (9th Cir. 1994). "Because only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered 'as a whole.'" Id. at 1443 (citations omitted). Notably, because substantial similarity is measured by only protected elements, the Court must "filter out and disregard the non-protectable elements in making [a] substantial similarity determination." Cavalier v. Random House, 297 F.3d 815, 822 (9th Cir. 2002).

At the outset, Zobmondo invokes the "inverse-ratio rule" to lower its burden to prove substantial similarity. In the Ninth Circuit, this rule "applies in those cases in which a party demonstrates the alleged copier's 'high degree of access' to the purportedly copied material." Funky Films, 462 F.3d at 1081; see also Three Boys Music, 212 F.3d at 485 ("[W]e require a lower standard of proof of substantial similarity when a high degree of access is shown."). However, "[n]o amount of proof of access will suffice to show copying if there are no similarities." Funky Films, 462 F.3d at 1081 (granting summary judgment even under the lower standard required by the inverse-ratio rule because of the lack of similarities).

Falls Media admits that at least Tom Shirtz had access to Zobmondo's game board when he worked on Falls Media's game. (Copyright Opp'n at 5 n.9.) Zobmondo's evidence also suggests that Falls Media considered Zobmondo's design in creating its own game. (See Copyright UF No. 12 (Tom Schirtz was aware of Zobmondo's game and was specifically instructed in an email from Gomberg to "make sure we don't come anywhere near [Zobmondo]"); id. (Falls Media instructed

Schirtz to change the game box colors from yellow to green and pink, colors that were "zobmondo-ish"); id. No. 13 (Schirtz stated that "I always took it as make sure we don't come anywhere near what this guy [Horn] does.").) None of this evidence directly suggests copying, but even if the Court views it in that light and concomitantly lowers the substantial similarity bar, as discussed in detail below, Zobmondo cannot survive summary judgment.

Zobmondo points to three elements of its game board similar to Falls Media's game board: "(1) both share the same unique spiral design along which players traverse to their ultimate goal, a perfect circle in the center of the board; (2) both contain four start spaces in the four corners from which players begin the game; and (3) both contain colored spaces marked with small round dots." (Copyright Opp'n at 24:9-13.). In assessing similarity, the Court "must take care to inquire only whether the protectable elements, standing alone, are substantially similar." Funky Films, 462 F.3d at 1077 (quoting Cavalier, 297 F.3d at 822) (emphasis in original)).

"Merger" renders an element unprotected when "idea and expression merge in representational objects[.]" Shaw, 919 F.2d at 1360. For example, merger occurred in the expression of a jeweled bee pin because the idea of a bee pin and its expression were inseparable. See Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 742 (9th Cir. 1971) ("There is no greater similarity between the pins of plaintiff and defendants than is inevitable from the use of jewel-encrusted bee forms in both."). Similarly, expression and idea merged into the single form of a plush dinosaur and "[a]ppellants therefore may place no reliance upon any similarity in expression resulting from either the physiognomy of dinosaurs or from the nature of stuffed

animals." Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987). Finally, the idea of a karate video game and its visual representation "are inseparable from, indispensable to, or even standard treatment of the idea of the karate sport." Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 209 (9th Cir. 1988). As a result, "[w]hen idea and expression coincide, there will be protection against nothing other than identical copying." Id. (quoting Krofft, 562 F.2d at 1168).

Similar to merger, the concept of "scenes a faire" renders elements unprotected if they are "expressions that are 'as a practical matter, indispensable or at least standard in the treatment of a given [idea].'" Id. at 208 (quoting Aliotti, 831 F.2d at 901) (brackets in original). "Though what may constitute scenes a faire will vary depending on the medium and the subject matter of the particular copyrighted work at issue, the question is whether that particular expression is so typical of the genre (i.e., a car chase in an action film) as to be 'indispensable.'" Rice v. Fox Broad. Co., 148 F. Supp. 2d 1029, 1053 (C.D. Cal. 2001), rev'd on other ground, 330 F.3d 1170 (9th Cir. 2003). Therefore, "where a copyrighted work is composed largely or primarily of unprotected elements, or elements 'limited' by 'merger' and 'scenes a faire,' it receives 'thin' rather than 'broad' protection." Id. When a work is entitled only to thin protection, it will be protected only when the alleged copying is "virtually identical." Apple Computer, 35 F.3d at 1446.

//

//

//

//

The image of the parties' game boards appears below:

Zobmondo's Game Board

Falls Media's Game Board



(See Lodged Physical Exs. X1, X4.)

a. Spiral Game Board with Center Goal

Both parties' game boards employ a spiral track that terminates in a circular goal in the center of the board. This element, alone, however, is unprotected because of either merger or scenes a faire. The idea of a spiral track on a game board can only be expressed by creating a game board with a spiral. As the Herbert Rosenthal court held regarding the expression of the idea of a jeweled bee pin, here there is no similarity between the parties' game board other than the expression that inevitably flows from the idea of a spiral game board. The spirals use different colors for their spaces, and the spaces are different sizes and shapes (i.e., irregular rectangles versus regular circles). Zobmondo's four-part spiral path contains an additional "spoke-and-wheel" element and terminates in a purple tornado in the center of the board. Falls Media's four-part spiral path is a true

spiral beginning at the edges of the board and terminating in the picture of a "deity."

Moreover, there are only a handful of ways in which the path on a game board can be expressed: square, circle, triangle, spiral, meandering, etc. Notably, Falls Media's game expert, Philip E. Orbanes, testified about prior board games utilizing a spiral game-play path. (Orbanes Report at 10, 16.) A spiral path may be a natural choice for a board game and granting Zobmondo a copyright over the design generally would grant Zobmondo a monopoly over this shape, the precise concern merger and scenes a faire were intended to prevent. See Shaw, 919 F.2d at 1360 ("Where idea and expression are unified, extending copyright protection to the objective elements of expression would grant the copyright holder a monopoly over the ideas expressed in the works, in violation of 17 U.S.C. § 102(b)."). Because the expression of the spiral design is incident to and merged with the idea of a spiral game board, it is not protected.

b. Start Spaces

Again, start spaces on a board game are unprotectable because their expression is either merged with the idea of start spaces or incident to the expression of a board game generally. Nor are the parties' use of start spaces similar beyond these unprotectable expressions of them. Zobmondo's game board contains eight start spaces (not four, as Zobmondo argues), one in each corner of the square board and one centered on each side. The start spaces in the corners are arrows pointing into the corners with their tips folded backward. Two spaces lead from each arrow to the spiral/wheel path. The other four start spaces are arrows pointing to the center edge of each side of the board, with their tips also folded backward. Falls

Media's game board contains four perfect circles designed as start spaces, each one located approximately at the one-quarter mark of each side of the board. The start spaces mark the beginning of each spiral at that point. The only similarity is that each board has start spaces. But the idea and expression of start spaces have merged and start spaces themselves are only scenes a faire of creating a board game. This feature of Zobmondo's board is not protected.

c. Colored Spaces with Small Round Dots

Like start spaces and a spiral game-play path, the idea of colored spaces marked with dots on a game board is either merged with the expression of these elements or is covered by the concept of scenes a faire of board games. Certainly companies producing board games would use bright colors to mark game-play spaces and may choose to use dots to mark those spaces. These are generic elements of board games that are inseparable from the idea of game-play paths. In addition, the spaces on the game boards are different. Zobmondo's game-play path is marked by irregularly shaped spaces alternating in dark red, green, yellow, light red, and blue, and marked at various places with circular purple tornados. Falls Media's game-play paths are either entirely dark green or entirely light green, and each game-play space is regularly shaped and marked by a lighter green dot. Again, the only similarity is the unprotected idea and expression of colored game-play spaces and representations of dots, which are merged into the idea of game-play spaces and scenes a faire of board games in general.

d. Virtual Identity

Because the elements Zobmondo claims are similar are generally unprotected, Zobmondo is entitled only to "thin" protection of its

game board. See Apple Computer, 35 F.3d at 1446. As a result, Zobmondo must establish "virtual identity" between Falls Media's game board and its own. Zobmondo has pointed to the elements it claims are virtually identical, but no rational jury could agree. Even under the lower evidentiary burden created by the "inverse-ratio" rule, Zobmondo has failed to create a genuine issue of fact that its game board is substantially similar to Falls Media's board. Thus, Zobmondo fails the extrinsic test and the Court GRANTS Falls Media's motion for summary judgment on this claim.

3. Falls Media's Game Box Does Not Infringe Zobmondo's Trade Dress of Its Game Boxes.

To establish trade dress infringement, a party must prove: (1) the claimed dress is non-functional; (2) the claimed dress serves as a source identifier either because it is inherently distinctive or has acquired secondary meaning; and (3) there is a likelihood of consumer confusion over the trade dress. See Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001). Falls Media challenges only the second and third elements, but the Court declines to consider the distinctiveness of Zobmondo's trade dress. As discussed below, even if Zobmondo's trade dress is inherently distinctive or has acquired secondary meaning, there is no likelihood of confusion between the parties' game boxes as a matter of law.

Eight factors are relevant to the likelihood of confusion analysis: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product

lines. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). Importantly, "summary judgment on likelihood of confusion is appropriate when marks are so dissimilar that there can be no likelihood of confusion." Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1074 (N.D. Cal. 2006) (citing Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 397-98 (9th Cir. 1982)). Although many cases have concluded that summary judgment is warranted if the marks are so dissimilar that no confusion exists as a matter of law, the Ninth Circuit recently decided that courts may not rely on this factor alone in granting summary judgment. See Jada Toys, 518 F.3d at 632-34. In that case, the court reversed the district court's grant of summary judgment on likelihood of confusion because the lower court had found only that the marks were so dissimilar that no consumer could be confused and declined to address the other Sleekcraft factors. Id. at 632. The court distinguished several prior cases, stating that "[t]hough the language we have used warns against 'excessive rigidity' in applying the test . . . we have never countenanced a likelihood of confusion determination based on a consideration of dissimilarity alone or, indeed, on the consideration of any single factor." Id. Notably, "while a likelihood of confusion determination may ultimately rest on a subset of factors, evidence of relatively important factors must be considered as part of that set. In the context of two subjectively dissimilar marks, evidence of actual confusion and evidence defining the context in which the goods are sold are particularly relevant." Id. at 633. The court then explained that two prior apparently inconsistent cases actually held that dissimilar marks, in the absence of evidence of actual confusion, could not support a likelihood of confusion finding. Id. at 633-34

(explaining Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036 (9th Cir. 1999) and Sleeper Lounge Co. v. Bell Mfg. Co., 253 F.2d 720 (9th Cir. 1958)).

First, Falls Media asks the Court to analyze the trade dress without considering the similarity of the use of the phrase "Would you rather . . .?". The Court concludes that this is proper. Neither party has provided case law discussing this precise issue. McCarthy suggests that a party might defend a trade dress infringement claim by pointing to the prominence of its own trademark on similar packaging such that consumers would not be confused as to source. 1 McCarthy on Trademarks & Unfair Competition § 8.16 (4th ed. 2008) (noting circuit split on the question); see, e.g., Conopco, Inc. v. May Dept. Stores Co., 46 F.3d 1556, 1570-71 (2d Cir. 1994) ("[I]n view of the prominent placement of the [defendant's] logo on the front of the [defendant's] product, the extensive exposure consumers have had to that logo, and the extended time period over which consumers have been able to distinguish the [defendant's] and [plaintiff's] brands without any apparent confusion - the findings made by the court do not support a conclusion that consumers associate the [defendant's] brand with [plaintiff], rather than with [defendant]."). This case is markedly different: both parties used a mark that was - at the time - properly registered by Falls Media, but has now been invalidated by the Court in this Order. In view of the policies underlying trademark registrations, Zobmondo may not use Falls Media's formerly protected mark "Would you rather . . .?" to establish trade dress confusion.

As discussed above, when Falls Media obtained a valid registration for the "Would you rather . . .?" mark, it also obtained a constructive priority use date of 1997, when the application was

first filed. As Falls Media notes, a junior user, such as Zobmondo, using a mark subject to a pending application "is usually well-advised to immediately cease use because once the registration issues, the registrant has national priority as of its application date and a right to sue." 5 McCarthy on Trademarks & Unfair Competition § 26:38 (4th ed. 2008). During the time the application was pending, however, Falls Media had only a contingent right to sue. See id. Zobmondo used Falls Media's registered mark during that time, and later used the mark's invalidity as a shield to avoid infringement damages.

It is a far different matter, however, to allow Zobmondo to use the mark subject to a pending registration as a sword for a trade dress claim. At the time the registration issued, the mark was presumptively valid. To allow Zobmondo to use the mark now to create damages under a trade dress claim would not only eviscerate Falls Media's presumptive rights from registration, it would encourage junior users to adopt a mark with a pending registration and then use the mark prominently in their packaging. At that point, they could not only challenge the validity of the senior user's mark, but also sue for trade dress infringement. Zobmondo is not prohibited from using Falls Media's mark and running the risk of an infringement suit, in the hopes that it might persuade a court to later invalidate that mark. But the Court will not also reward Zobmondo with trade dress damages for using a mark that was presumptively valid at the time of the junior use. The defense of invalidity of a federally registered mark should not be used both as a shield to avoid trademark damages and as a sword to obtain trade dress damages. Therefore, the Court will disregard the use of the identical "Would you rather . . .?" phrase in assessing similarity of the parties' trade dress, although

it is appropriate to consider any similarities of font color, size, style and presentation of the phrase.

In considering whether the parties' trade dress is substantially similar, the Court looks at the "'total image of a product' and may include features such as size, shape, color, color combinations, texture and graphics." International Jensen, 4 F.3d at 822.

Illustrations of the parties' game boxes appear below:

Zobmondo's "twisted, sick and wrong" version




Zobmondo's "game of wacky & mind-boggling questions" version




Falls Media's Game




(See Lodged Physical Exs. 2-4.)

Zobmondo points to four specific features of Falls Media's game box that are allegedly similar to its two boxes: "(1) Falls Media's packaging contains a spiral pattern much like the wavy concentric circles on Zobmondo's packaging; (2) the words 'Would you rather . . .?' are printed on all four sides of each box using thick, yellow lettering with a shaded black border (which is also the same color scheme used for the 'Zobmondo!!' text at the top of Zobmondo's box); (3) all four sides of each box contain an example of a 'Would you rather . . .?' dilemma printed in bold white text with black shadowing; and (4) the packaging for both products emphasizes fluorescent colors such as green, yellow, and pink with fluorescent green being the predominant color on both Zobmondo's version of its

game for adults and Falls Media's, which is also marketed to adults." (Copyright Opp'n at 25:5-13.) None of these aspects of Falls Media's game would cause consumer confusion.

First, Zobmondo's box contains a "lava lamp" pattern - as described by both Horn and designed Sanford-Burrows - that extends from two or three corners of the boxes onto the sides. The pattern contains multiple fluorescent colors and is "warped" rather than regular. In contrast, Falls Media's box contains a regular spiral pattern, much like its game board, of alternating non-fluorescent light green and dark green spirals. When viewing Falls Media's box, the consumer's eye is drawn to the center, where the spirals terminate, whereas with Zobmondo's boxes, the consumer is drawn to the edges, where the lava lamp pattern appears to be "dripping" from the top onto the sides of the box. No reasonable consumer looking at the spirals on Falls Media's box would confuse it with the wavy, multi-colored, irregular "lava lamp" pattern on Zobmondo's box.

Second, the style, color, and placement of text on the boxes is not similar on the parties' games. For the most prominent feature on Zobmondo's boxes - the title of "Would you rather . . .?" - Zobmondo used thick white lettering with either pink or red outlines, while Falls Media used thinner, sharper yellow lettering with a black outline. Both parties' games display the titles on the sides of the boxes: in the "twisted, sick and wrong" version, Zobmondo's title is in large white letters with a pink outline and is located to the left of the panel, next to a "Would you rather . . .?" question inside a greenish-yellow circle; in the "game of wacky & mind-boggling questions" version, Zobmondo's title is in gold with a faint black shadow located across the middle with a "Would you rather . . .?"

question centered below it; and in Falls Media's game, the title is in yellow with a black background shifted to the left edge with two "Would you rather . . .?" questions below it in two different font sizes.

Third, although the parties use examples of "Would you rather . . .?" dilemmas on the sides of the boxes, every question is different. And Falls Media presents two questions on each side of its box, while Zobmondo presents only one.

Fourth, the color schemes on the boxes are very different. Zobmondo's boxes contain many, mostly fluorescent, colors, including pink, red, orange, yellow, blue, purple, white, and black. Falls Media's box, in contrast, is predominantly a muted dark green and light green, with accents of yellow, black and white for the text. The color schemes themselves are in no way similar.

Moreover, the boxes are different sizes; Falls Media's game box is smaller, about one-third the size of Zobmondo's game boxes.

In short, the only potential similarity between Falls Media's game box and Zobmondo's game boxes is the use of the "Would you rather . . .?" phrase. However, the Court will not consider this similarity and, absent that, the features Zobmondo has identified as similar simply are not.

As for the other Sleekcraft factors, the games share proximity and marketing channels since they are both board games based on a similar concept, Zobmondo suggests that Falls Media considered Zobmondo's game design in creating its own,[25] Zobmondo claims that its

---

[25]The relevant Sleekcraft factor encompasses Falls Media's intent in choosing the trade dress similar to Zobmondo's. See AMF, 599 F.2d (continued...)

trade dress is strong, and consumers probably do not exercise a high degree of care in purchasing these relatively low-priced board games. Zobmondo concedes, however, that no evidence of actual confusion exists. Even considering Zobmondo's competing evidence, Zobmondo cannot defeat summary judgment. Zobmondo might have a strong mark, the parties might have similar products, and Falls Media might have considered Zobmondo's trade dress in designing its own, but, as a matter of law, the marks are dissimilar and there is no evidence of actual confusion, the two most important factors, as noted in Jada Toys. See id. at 633. The Court is cognizant of the Ninth Circuit's admonition that "the potential for a judge to elevate his or her own subjective impressions of the relative dissimilarity of the marks over evidence of, for example, actual confusion, is great. And where the subjective impressions of a particular judge are weighed at the expense of other relevant evidence, the value of the multi-factor approach sanctioned by this Court is undermined." Jada Toys, 518 F.3d at 633. Given the strength of Falls Media's showing of dissimilarity and lack of actual confusion, the Court concludes that no reasonable jury could find a likelihood of confusion here, even if the jury accepted Zobmondo's competing evidence. The Court GRANTS Falls Media's motion for summary judgment on Zobmondo's trade dress claims over its game boxes.

---

[25](...continued) at 355. As discussed in detail above, Zobmondo's evidence supports at most an inference of access, not that Falls Media ever intended to adopt similar trade dress. Moreover, proof of access alone cannot overcome the sheer dissimilarity of the parties' trade dress and the lack of any evidence of actual confusion. The evidence clearly demonstrates that, even if Falls Media subjectively sought to copy Zobmondo's trade dress, it did not accomplish this end because consumers, in fact, were not confused by the parties' trade dress.

4. Falls Media's Game Box Does Not Infringe Zobmondo's Copyrights Over Its Game Boxes.

Zobmondo does not delineate which elements of its game box are subject to copyright protection beyond the elements it claims are protected trade dress. In any event, the substantial similarity inquiry under copyright law is identical to the similarity inquiry under trade dress law. Cf. Conan Properties, Inc. v. Mattel, Inc., 712 F. Supp. 353, 362 (S.D.N.Y. 1989) (noting that "the absence of substantial similarity [for purposes of a copyright action] leaves little basis for asserting a likelihood of confusion or palming off for purposes of a claim under § 43(a) of the Lanham Act." (quoting Warner Bros. Inc. v. American Broad. Cos., 720 F.2d 231, 246 (2d Cir. 1983) (brackets in original)). Even under the "inverse-ratio" rule as applied to Falls Media's game box, Zobmondo cannot defeat summary judgment. Again, "[n]o amount of proof of access will suffice to show copying if there are no similarities." Funky Films, 462 F.3d at 1081. Here, there are no similarities between Falls Media's game box and Zobmondo's game box. The Court GRANTS Falls Media's motion for summary judgment on Zobmondo's copyright claims over its game boxes.

4. Unfair Competition and Remaining Claim

Because Zobmondo's unfair competition claim rests on its trade dress and copyright infringement claims, the Court also GRANTS Falls Media's motion for summary judgment on this claim. Cf. Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000) (applying the same "likelihood of confusion" test to unfair competition claims). Falls Media pleads a counter-claim that Zobmondo's game boxes infringe on the trade dress of its books. That claim remains and is not resolved by the Court's decision here.

## IV. CONCLUSION

The Court GRANTS Zobmondo's motion for summary adjudication on Falls Media's claims of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, trademark infringement under 15 U.S.C. § 1125(a), and common law trademark infringement and Zobmondo's counter-claim for cancellation of Falls Media's registration of the mark "Would you rather . . .?" Falls Media alleged its seventh through fourteenth claims for declaratory judgments that its game box and game board do not infringe Zobmondo's alleged federal and common law trade dress and copyrights in its games, and a fifteenth claim for declaratory judgment that it has not committed unfair competition under California law, all of which arise from Zobmondo's claims for trade dress and copyright infringement in Case No. CV 06-3459. Because the Court grants Falls Media's motion for summary judgment on these claims, the Court also GRANTS summary judgment on these claims in Case No. CV 07-571. The parties also agree that Zobmondo's fourth and sixth counter-claims for trademark infringement and unfair competition cannot survive the Court's decision, so the Court DISMISSES those claims. In Case No. CV 07-571, only Zobmondo's fifth counter-claim for damages from Falls Media's fraud in the registration process remains.

The Court GRANTS Falls Media's motion for summary judgment on Zobmondo's claims of trade dress infringement under 15 U.S.C. § 1125(a), common law trade dress infringement, copyright infringement, and unfair competition. In Case No. CV 06-3459, only Falls Media's counter-claim that Zobmondo's games boxes infringe on the trade dress of Falls Media's books remains.

**DATED:** June 11, 2008

AUDREY B. COLLINS
UNITED STATES DISTRICT JUDGE