O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SPIN MASTER, LTD., et al., | ) | Case Nos. **CV 06-3459 ABC (PLAx)** |
| | ) | CV 07-0571 ABC (PLAx) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER RE: MOTION FOR SUMMARY** |
| | ) | **JUDGMENT OR, IN THE ALTERNATIVE,** |
| ZOBMONDO ENTERTAINMENT, LLC, et | ) | **SUMMARY ADJUDICATION AS TO** |
| al., | ) | **PLAINTIFFS JUSTIN HEIMBERG AND** |
| Defendants. | ) | **DAVID GOMBERG** |
| _____ | ) | |

Pending before the Court is Defendants Zobmondo Entertainment,
LLC and Randall Horn's (collectively "Zobmondo's") motion for summary
judgment, or, in the alternative, summary adjudication as to
Plaintiffs Justin Heimberg ("Heimberg") and David Gomberg ("Gomberg"),
filed on July 12, 2011.  (Docket No. 320.)  Plaintiffs Spin Master,
Ltd. ("Spin Master"), Heimberg, and Gomberg (collectively
"Plaintiffs") opposed on August 1, 2011[1], and Zobmondo replied on
August 8, 2011.  The Court heard oral argument on August 22, 2011.

_____

[1]In the minutes of a January 24, 2011 status conference, the
Court ordered that this motion would not exceed 10 pages.  (Docket No.
274.)  Zobmondo complied, but Spin Master filed an 18-page opposition.
While the clear (and most equitable) import of the Court's minutes was
that none of the briefs would exceed 10 pages, the Court DENIES
Zobmondo's request to strike Spin Master's opposition for this reason.
The Court admonishes Spin Master to adhere to all Orders and rules in
future filings.

1   For the reasons below, the Court DENIES the motion brought by Zobmondo
2   and, finding no disputed facts, sua sponte GRANTS summary judgment in
3   favor of Plaintiffs.

**BACKGROUND**

5       The pending motion addresses only a single narrow issue: whether
6   Heimberg and Gomberg have standing to remain plaintiffs in this
7   trademark infringement case in light of transactions between their
8   former company Falls Media, LLC and first Imagination International
9   Corp. ("Imagination"), then Spin Master, involving the trademarks at
10  issue.   The facts relevant to that issue are undisputed.

11      When these consolidated suits were filed, Heimberg, Gomberg, and
12  their wholly-owned company Falls Media owned the mark "Would You
13  Rather . . .?," U.S. Trademark Reg. No. 2,970,830.   In 2008, while
14  this case was pending on appeal after the Court granted summary
15  judgment to Zobmondo, Imagination acquired Falls Media by way of a
16  contract entitled "Membership Interest Purchase And License Agreement"
17  (the "Membership Agreement").   (Zobmondo's Amended Separate Statement
18  of Undisputed Facts ("SUF") ¶ 1.)   The Membership Agreement provided
19  that, although Imagination would acquire Falls Media, Falls Media
20  would retain title to the "Would You Rather . . .?" mark.   (Conf.
21  Gabriel Decl., Ex. A ¶ 1(d)(i).)   With regard to this lawsuit, the
22  agreement further indicated that the parties would:

23              (ii) Cause Imagination, through its ownership of
                Falls Media, to have all rights and obligations
24              with respect to prosecuting and further enforcing
                and defending the Trademark Lawsuit and any
25              appeals thereto and have Imagination pay the
                attorneys' fees and costs in connection with all
26              further proceedings in the Trademark Lawsuit and
                indemnify Sellers [Heimberg and Gomberg] from all
27              liabilities related to the Trademark Lawsuit.

28

1                  (iv)[2] Share the proceeds of the Trademark
Lawsuit recovery, if any, after appeal of the
2                  Trademark Lawsuit trial court decision with such
proceeds being divided between Sellers, on the one
3                  hand, and Falls Media (which shall be one hundred
percent owned by Imagination), on the other hand,
4                  on the terms specified herein.

5  (<u>Id.</u> ¶ 1(d)(ii), (iv).)   The Membership Agreement also explained:

6                  The Trademark Lawsuit relates to claims by Falls
Media against Zobmondo with respect to trademark
7                  infringement, trademark dilution and unfair
competition claims as well as Zobmondo's
8                  cancellation, trade dress and damages for
fraudulent procurement counterclaims, all of which
9                  were resolved on summary judgment pursuant to the
court's decision of June 11, 2008 against Falls
10               Media.  Falls Media desires to file an appeal with
respect thereto ("Appeal"). . . .  In the event
11               that the Ninth Circuit Appeals Court remands the
Trademark Lawsuit back to the District Court for
12               trial ("New Trial"), Imagination shall determine in
its sole discretion all matters with respect to the
13               actions of Falls Media in connection with a New
Trial[,] including without limitation whether to
14               proceed with a New Trial, how much to expend in
attorneys' fees, who shall act as attorneys for
15               Falls Media in said New Trial, etc.  Imagination
shall also determine in its sole discretion the
16               handling of all additional motions, lawsuits or
other proceedings for or against Zobmondo or
17               Randall Horn in connection with the protection of
the Intellectual Property ("Further Trademark
18               Enforcement").  For the avoidance of doubt, the
parties hereto agree that Imagination shall direct
19               and make decisions in connection with all matters
related to the Appeal, any New Trial, any Further
20               Trademark Litigation and Further Trademark
Enforcement in its sole discretion, including
21               without limitation whether to litigate, settle or
otherwise resolve any of the foregoing as
22               Imagination wishes.

23  (<u>Id.</u> ¶ 3(b).)  Finally, by way of this agreement, Imagination was

24  obligated to pay Heimberg and Gomberg a royalty for use of the mark

25  (<u>id.</u> ¶ 4), although Heimberg and Gomberg's company Seven Footer

26  Entertainment LLC retained "a perpetual, exclusive, transferable,

27

28          [2]There was no subsection "(iii)" in this paragraph of the
agreement.

1   sublicensable, royalty free license throughout the world to use and

2   exploit the Intellectual Property to create, publish, market, sell,

3   distribute, advertise and promote books . . . electronic books, books

4   on tape and other audio books, podcasts, comic strips and syndicated

5   on line and print features (collectively 'Print Materials' and 'Print

6   Rights')."  (Id. ¶ 6.)

7        In August 2010, after this Court's summary judgment was reversed

8   and the case remanded, Imagination sold the "Would You Rather . . . ?"

9   trademark to Spin Master through an "Asset Purchase Agreement."  (SUF

10  ¶ 6.)  In that agreement, Spin Master was to assume liability for "the

11  continuation, prosecution, defense, settlement, or other disposition

12  of the ["Would You Rather . . .?"] Litigation from and after the

13  Closing Date."  (Conf. Gabriel Decl., Ex. B ¶ 2.3(b).)[3]  As part of

14  this agreement, Heimberg, Gomberg, and their company Seven Footer

15  entered into a "Royalty Agreement" with Spin Master (SUF ¶ 9), which

16  contained the following provisions as relevant to conducing this

17  litigation:

18        1.   Background

19        . . .

20        (c) . . . As a result of the acquisition by
          Imagination of all of the membership interests in
21        Falls Media, Imagination obtained control of all
          rights and obligations with respect to prosecuting
22        and further enforcing and defending the Trademark
          Lawsuit and any appeals thereto and all attorneys'
23        fees and costs in connection with all further
          proceedings in the Trademark Lawsuit.

24
          (d) Pursuant to an Asset Purchase Agreement
25        between Imagination, Falls Media, Spin Master and
          others even dated herewith (the "Asset Purchase

26  _____

27       [3]Zobmondo claims that Heimberg and Gomberg individually signed
    the Asset Purchase Agreement, but their signatures do not appear on
28  the signature pages.  (Conf. Gabriel Decl., Ex. B at 51—53.)

4

1   Agreement"), Spin Master acquired from Imagination
    and Falls Media as vendors all right, title and
2   interest in and to the Intellectual Property and
    all goodwill associated therewith[,] including the
3   right to sue and recover damages or other relief
    for past, present or future infringement of the
4   Intellectual Property.  Pursuant to the Asset
    Purchase Agreement, Spin Master was required by
5   Falls Media and Imagination to assume all rights
    and obligations with respect to the Trademark
6   Lawsuit and any Further Trademark Litigation (as
    defined below) and all other rights, choses in
7   action, benefits, and interests relating to the
    Intellectual Property and the Would You Rather
8   products including to sue and recover damages or
    other relief for past, present and future
9   infringement of the Intellectual Property
    (collectively, the "WYR Purchased Assets").

10
    . . .

11
    (e) As a condition of the completion of the
12  transactions contemplated in the Asset Purchase
    Agreement and the transfer of the WYR Purchased
13  Assets to Spin Master, the Inventors and Spin
    Master . . . have agreed to enter into this
14  Royalty Agreement to:

15      (i)   Share the after tax proceeds of the Trademark
              Lawsuit recovery, if any, with such after tax
16            proceeds being divided between Inventors, on
              the one hand, and Spin Master, on the other
17            hand, on the terms specified herein;

18      (ii)  Provide for the ongoing payment by Spin
              Master to the Inventors of certain royalties
19            in connection with Spin Master's exploitation
              of products related to the Trademark and
20            Intellectual Property including without
              limitation Spin Master's exploitation of the
21            WYR Products;

22      . . .

23      (iv)  Provide for the ongoing use and exploitation
              by Seven Footer, a company owned by the
24            Inventors, of the Print Rights, Print
              Materials and creation of New Materials as
25            described in Section 6 of this Agreement.

26  (Conf. Gabriel Decl., Ex. C ¶ 1.)

27      Section 3(e) of the Royalty Agreement governed the parties'

28  rights with regard to this litigation, stating that, upon completion

of the Asset Purchase Agreement, Spin Master "was required by Falls Media and Imagination to assume and has received an assignment from Imagination and Falls Media of all rights and obligations with respect to Intellectual Property, the New Trial and the Further Trademark Litigation, including the right to sue and recover damages or other relief for past, present or future infringement of the Intellectual Property." (Id. ¶ 3(e).)[4]  Moreover, Heimberg and Gomberg "acknowledge that Spin Master will, in its sole discretion, direct and make decisions in connection with all matters related to the New Trial and any Further Trademark Litigation and any matters relating to litigation with respect to the Intellectual Property.  Spin Master shall also determine in its sole discretion the handling of all additional motions, lawsuits or other proceedings for or against Zobmondo or Randall Horn in connection with the protection of the Intellectual Property ('Further Trademark Enforcement')." (Id.) Importantly, the Royalty agreement stated that Heimberg and Gomberg "shall not be required to expend any sums in connection with the New Trial, any Further Trademark Litigation and/or any Further Trademark Enforcement, all of which, if pursued by Spin Master, in Spin Master's sole discretion, shall be pursued and defended by Spin Master in the name of Spin Master and/or as otherwise required by law." (Id. ¶ 3(e) (second subsection).)

The agreement contemplated that Spin Master would be substituted in this case for Falls Media, but did not concomitantly indicate that Heimberg and Gomberg would be dismissed as parties.  (Id.)  Heimberg

---

[4]The subsections in paragraph 3 of the Royalty Agreement are apparently mislabeled, containing two subsections labeled "(e)."  This clause appears in the first one.

and Gomberg were also required to cooperate with Spin Master in this litigation, including by "making themselves available as witnesses." (Id.)

Like the Membership Agreement with Imagination, the Royalty Agreement granted Spin Master an exclusive worldwide license to the "Would You Rather . . . ?" mark and Spin Master was obligated to pay Heimberg and Gomberg a royalty for that license.  (Id. ¶ 4(a), (b).) Also like the Membership Agreement, Spin Master granted to Heimberg and Gomberg's company Seven Footer "a perpetual, exclusive, non-transferable, royalty-free license throughout the world to use and exploit the Intellectual Property to create, publish, market, sell, distribute, advertise and promote books . . . electronic books, books on tape and other audio books, podcasts[,] comic strips and syndicated on line and print features" using the "Would You Rather . . . ?" mark. (Id. ¶ 6(a).)

During the meet-and-confer process leading to this motion, Zobmondo explained in detail its position that Plaintiffs lacked standing to remain in this case based on the language in the Membership Agreement, Asset Purchase Agreement, and Royalty Agreement. (Davidson Decl., Ex. 1.)  In response, Plaintiffs maintained that those agreements did not completely extinguish Heimberg and Gomberg's interests in this case, and, in July 2011 they entered a "First Amendment to the August 3, 2010 Royalty Agreement" (the "First Amendment")[5] "to make clear that the Inventors [Heimberg and Gomberg], both directly and/or through Seven Footer, shall have the right to be co-plaintiffs in the Trademark Lawsuit" to protect their interests

---

[5]The Amendment does not indicate a specific date other than "July 2011."  (Conf. Gabriel Decl., Ex. D at 1.)

7

1  under the Royalty Agreement.  (Conf. Gabriel Decl., Ex. D at 1.)

2  Those interests include a vested interest in the "Would You Rather . .

3  .?" mark, proceeds and future royalties from the use of the mark, and

4  attorney's fees in this case, all of which "may be impaired, impeded

5  and otherwise adversely impacted by the outcome of" this case.  (Id.)

6  Moreover, the First Amendment explained that, while the Royalty

7  Agreement indicated that Spin Master would be substituted into this

8  case, the parties did not "agree or intend that the Inventors should

9  be dismissed as plaintiffs."  (Id.)

10      In light of this understanding, Plaintiffs added the following

11  clause to paragraph 3 of the Royalty Agreement:

12          The parties acknowledge and agree that the
            Inventors directly and through their limited
13          liability company, Seven Footer, have certain
            exclusive license rights in and to the Trademark,
14          and a vested interest in the Trademark and
            Trademark Proceeds, that are the subject of the
15          Trademark Lawsuit and any New Trial, and have a
            further vested interest in future Royalties
16          related to exploitation of the Trademark.  The
            parties further acknowledge and agree that said
17          exclusive license rights and vested interest may
            be impaired, impeded and otherwise adversely
18          impacted by the outcome of the Trademark Lawsuit
            and any New Trial including without limitation any
19          judgment entered therein or any settlement entered
            into therein.  In view of the foregoing, the
20          parties agree that notwithstanding anything else
            stated in this Agreement or any other agreement
21          between or among the parties:

22          (a)  the Inventors shall have the right to
                 continue to participate in the Trademark
23               Lawsuit as a party plaintiff, alongside Spin
                 Master as co-plaintiffs, to continue to
24               prosecute the Trademark Litigation and
                 thereby protect and preserve their exclusive
25               license rights and vested interests in the
                 Trademark, the Trademark Lawsuit, the
26               Trademark Proceeds, and Royalties; and

27          (b)  Spin Master shall pay all costs associated
                 with any participation of the Inventors in
28               the Trademark Lawsuit, provided such costs

are considered "Spin Master Further Trademark Litigation Costs."

(Id. at 2.)

In addition to the First Amendment to the Royalty Agreement, Plaintiffs submitted a declaration from Chris Harrs, Spin Master's Senior Vice President and General Counsel, who was involved in the negotiation and drafting of the Royalty Agreement.  He testified that the intent was always that Heimberg and Gomberg would continue as plaintiffs in this case, in light of the interests they retained in the Royalty Agreement.  (Harrs Decl. ¶¶ 2–3.)

**LEGAL STANDARD**

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing on the essential elements of its claims on which it bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  An issue of fact is genuine if it reasonably can be resolved in  favor of either party.  Anderson, 477 U.S. at 250-51.  The nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. Id. at 255.  But "mere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).

Importantly, "if one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of the movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party." Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982).  Thus, a sua sponte grant of summary judgment against the non-movant is appropriate where (1) "no material dispute of fact exists" and (2) "the losing party has had an adequate opportunity to address the issues involved, including adequate time to develop any facts necessary to oppose summary judgment."  Fuller v. City of Oakland, 47 F.3d 1522, 1533 (9th Cir. 1995).  The non-movant has an adequate opportunity to address the issues when "[t]he salient issues upon which the district court grant[s] summary judgment were presented in the original motion." Gospel Missions of Am. v. City of Los Angeles, 328 F.3d 548, 553 (9th Cir. 2003); see also Destination Ventures, Ltd. v. FCC, 46 F.3d 54, 56 (9th Cir. 1995) (finding non-movant had reasonable notice of sua sponte grant of summary judgment "by virtue of its own motion for summary judgment and its submission of factual evidence outside the pleadings").

## DISCUSSION

The motion presents the Court with two related questions: (1) whether Heimberg and Gomberg have standing to be parties in this case; and (2) if they have standing, whether they retained their rights to remain parties when they executed the Membership Agreement, Asset Purchase Agreement, and Royalty Agreement.  The undisputed facts demonstrate that the answer to both questions is yes, which allows

1  Heimberg and Gomberg to remain plaintiffs in this case.  Because there
2  are no disputed facts, Zobmondo's motion for summary judgment must be
3  denied and summary judgment must be granted to Plaintiffs, removing
4  this issue from those to be presented at trial.

5      **A.   Standing**

6          "At an 'irreducible constitutional minimum,' standing requires
7  the party asserting the existence of federal court jurisdiction to
8  establish three elements: (1) an injury in fact that is (a) concrete
9  and particularized and (b) actual or imminent; (2) causation; and (3)
10 a likelihood that a favorable decision will redress the injury."
11 Wolfson v. Brammer, 616 F.3d 1045, 1056 (9th Cir. 2010).  "To
12 establish standing to sue for trademark infringement under the Lanham
13 Act, a plaintiff must show that he or she is either (1) the owner of a
14 federal mark registration, (2) the owner of an unregistered mark, or
15 (3) a nonowner with a cognizable interest in the allegedly infringed
16 trademark."  Halicki Films, LLC v. Sanderson Sales & Mktg., 547 F.3d
17 1213, 1225 (9th Cir. 2008).  Here, Plaintiffs do not contend that
18 Heimberg and Gomberg still own the "Would You Rather . . .?" mark,
19 given the agreements transferring their and Falls Media's ownership
20 first to Imagination and then to Spin Master; instead, Plaintiffs
21 claim that Heimberg and Gomberg satisfy the third category because
22 they still retained "cognizable interests" in the "Would You Rather .
23 . .?" mark.  The third category is satisfied by proof that the
24 plaintiff is a "non-owner with a 'commercial interest in the allegedly
25 misused mark that is likely to be damaged.'"  Id. at 1227.

26         Zobmondo largely concedes that Heimberg and Gomberg retained
27 commercial interests in the "Would You Rather . . .?" trademark, which
28 would confer standing on them to remain in this lawsuit.  For example,

the Membership Agreement and the Royalty agreement both gave Heimberg
and Gomberg a "a perpetual, exclusive, non-transferable, royalty-free
license throughout the world to use and exploit" the "Would You Rather
. . .?" mark on books and other printed material, which provides them
standing to sue for trademark infringement under both Lanham Act
provisions asserted in this case.  See <u>Ultrapure Sys., Inc. v. Ham-Let</u>
<u>Group</u>, 921 F. Supp. 659, 665—66 (N.D. Cal. 1996) (finding exclusive
licensee had standing to assert claim under § 1114)[6]; <u>see also</u> <u>Waits</u>
<u>v. Frito-Lay, Inc.</u>, 978 F.2d 1093, 1108—09 (9th Cir. 1992) (finding
standing under § 1125(a) where a plaintiff is "injured commercially by
the 'deceptive and misleading use of marks.'").  The Royalty Agreement
also gave Heimberg and Gomberg the right to a share of any monetary
award arising from this lawsuit and to royalties for Spin Master's use
of the mark on products other than books and printed materials, which
are "commercial interests" sufficient to confer standing.  <u>See</u>
<u>Halicki</u>, 547 F.3d at 1227 (indicating that a "cognizable commercial
interest" can exist based on retention of "merchandising rights" in
trademark).  Thus, Heimberg and Gomberg have standing to remain in
this case.

    **B.   Assignment of Interests**

The real crux of the parties' dispute is whether Heimberg and
Gomberg assigned to Spin Master their rights to maintain this
litigation by executing the Membership Agreement with Imagination,
then the Asset Purchase Agreement and Royalty Agreement with Spin
Master.  "Parties may validly assign trademarks and include with that
assignment the right to sue on existing causes of action."

---

[6](Mot. 6 ("Zobmondo concedes that all else being equal, trademark
licensees may assert infringement claims.").)

FragranceNet.com, Inc. v. FragranceX.com, Inc., 679 F. Supp. 2d 312, 327 (E.D.N.Y. 2010).

　　Under California contract law, "[w]here parties dispute the meaning of contractual language, 'the first question to be decided is whether the disputed language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over." Halicki, 547 F.3d at 1223. The Court must provisionally receive extrinsic evidence to determine whether the contract at issue is "reasonably susceptible" to the interpretation urged by a party, even if the court concludes "'that the language of the contract appears to be clear and unambiguous on its face.'" Id. While extrinsic evidence may not "vary, alter or add to" the terms of a contract, it may be examined "'to prove a meaning to which the language of the instrument is reasonably susceptible'"; if the evidence supports the interpretation urged, then it is "'admitted to aid in . . . interpreting the contract.'" Id.

　　Zobmondo points to several provisions in the various agreements that it claims demonstrate that Heimberg and Gomberg assigned to Spin Master all rights to remain in this case. For example, in the Royalty agreement, Spin Master was given the "right to sue and recover damages or other relief for past, present or future infringement of the" "Would You Rather . . . ?" mark and Heimberg and Gomberg agreed with regard to this case that they "shall not be required to expend any sums in connection with the New Trial, any Further Trademark Litigation and/or any Further Trademark Enforcement, all of which, if pursued by Spin Master, in Spin Master's sole discretion, shall be pursued and defended by Spin Master in the name of Spin Master and/or as otherwise required by law." Moreover, Imagination, and then Spin

1  Master, was given the "sole discretion" to decide all matters related

2  to this case, including whether to litigate, settle, or otherwise

3  resolve the lawsuit.

4      Contrary to Zobmondo's contentions, this language does not

5  unambiguously demonstrate that Heimberg and Gomberg assigned their

6  rights to remain parties in this case.  For example, the Royalty

7  agreement stated that Spin Master would pursue this and other

8  litigation in its name "and/or otherwise required by law," which is

9  not further explained.  Likewise, as Plaintiffs point out, although

10 Imagination and Spin Master secured the right to conduct the

11 litigation, no provision in any of the agreements explicitly required

12 Heimberg and Gomberg to also be dismissed from this case.

13     At most, the language in the agreements is ambiguous, so resort

14 to extrinsic evidence is appropriate (and indeed required).  See

15 Halicki, 547 F.3d at 1223.  The only extrinsic evidence was offered by

16 Plaintiffs, which unequivocally supports their interpretation.[7]  Spin

17 Master's Senior Vice President and General Counsel attested that the

18 parties understood all along that the Royalty Agreement did not

19 preclude Heimberg and Gomberg from remaining plaintiffs in this case.

20 To cement this understanding into the Royalty Agreement itself, the

21 parties executed the First Amendment, unambiguously setting forth

22 their mutual understanding.[8]

23

24     [7]Because the Court accepts Plaintiffs' interpretation of the
   agreements, the Court need not address Plaintiffs' contention that
   joinder rules support keeping Heimberg and Gomberg in this case.

25

26     [8]Zobmondo's argument that the First Amendment was "sham" fails.
   Because the Royalty Agreement was ambiguous, the First Amendment
   merely clarified the intent of the parties, which does not require

27 separate consideration.  See Cutter Labs., Inc. v. Twining, 221 Cal.
   App. 2d 302, 311 (1963).  In any case, validity of the First Amendment
28                                                    (continued...)

14

This scenario is indistinguishable from the facts in <u>Halicki</u>, where the court concluded that the plaintiff was not stripped of standing to pursue copyright claims by virtue of an agreement assigning some of her rights to another entity. <u>Id.</u> at 1220.  In that case, the plaintiff had entered an agreement assigning some copyright interests, and, according to her, reserving others.  <u>Id.</u> at 1220. Both parties to the agreement believed the plaintiff had in fact reserved certain rights with regard to the copyright at issue, as demonstrated by declarations from her and her attorneys and a later "Acknowledgment and Agreement" executed after the issue of standing was raised in the litigation, which definitely set out the parties' mutual belief.  <u>Id.</u> at 1222.  In finding this extrinsic evidence unequivocally supported the plaintiff's interpretation of the agreement, the court explained that "[t]his is not the more usual situation where parties to an agreement disagree as to the meaning of its terms.  Here, statements by both parties to the Agreement . . . demonstrate that each party had the same intention as to the meaning of" the agreement.  <u>Id.</u> at 1223; <u>see also</u> <u>Cutter Labs., Inc. v. Twining</u>, 221 Cal. App. 2d 302, 311 (1963) (treating supplemental agreement as demonstrating parties' intended interpretation of the original agreement).  The same is true here: all the extrinsic evidence demonstrates that Plaintiffs believed that Heimberg and Gomberg would remain parties in this case, supporting Plaintiffs' interpretation of the Royalty Agreement.  Absent any evidence to the

---

[8](...continued)
is beside the point because, valid or not, it is undisputed evidence of the parties' intended meaning of the Royalty Agreement.  <u>See</u> <u>id.</u> (considering even a void supplemental agreement as evidence of intent in the original).

1  contrary, the only possible conclusion is that Heimberg and Gomberg

2  did not assign to Spin Master their rights to remain in this case.[9]

3      **C.   Remaining Contentions**

4      Zobmondo briefly argues that Heimberg and Gomberg should be

5  dismissed because they were not named as Plaintiffs in the remaining

6  claims I through VI in the Amended Complaint.[10]  (Docket No. 236.)  In

7  claims I through VI of the Amended Complaint, the label "Falls Media"

8  was used to refer to the party bringing those claims, whereas in the

9  other claims not at issue here, the label "Plaintiffs" was used to

10  refer to the parties bringing those claims.  (Gabriel Decl., Ex. 2 at

11  8–25.)  In Zobmondo's view, because the Amended Complaint defined

12  "Falls Media" as meaning only Falls Media, and defined "Plaintiffs" to

13  include Falls Media, Heimberg, and Gomberg (id. ¶¶ 1, 4), Heimberg and

14  Gomberg were not named as plaintiffs on the remaining claims.

15      Zobmondo's dubious interpretation of the complaint stands at odds

16  with its actions treating Heimberg and Gomberg as plaintiffs on the

17  remaining claims.  For example, in moving for summary judgment on

18  trademark infringement claims I, II, and VI back in 2008, Zobmondo

19  stated that those claims were "alleged by Falls Media, LLC, David

20  Gomberg, and Justin Heimberg."  (Davidson Decl., Ex. 4 at 2; see also

21  id. at 9.)  Similarly, in a post-remand status report, Zobmondo

22  treated Falls Media, Heimberg, and Gomberg as all having asserted the

23  claims at issue.  (Docket No. 236 at 2 (defining "Falls Media" as

24  ─────────────

25  [9]The Court finds unpersuasive Zobmondo's eschewing of the binding opinion in Halicki in favor of a cursory, unpublished out-of-circuit

26  case, Two Pepper Music v. Rhino Records, Inc., 173 F.3d 846 (2d Cir. 1999) (unpublished).

27  [10]Zobmondo did not raise this contention in the meet-and-confer

28  process, so the Court could simply reject it as violating Local Rule 7-3.  The Court nevertheless finds that it fails on the merits.

1  encompassing all three parties, which alleged claims I through VI of

2  the complaint).) And in a stipulation to realign the parties after

3  Spin Master acquired the "Would You Rather . . .?" mark, Zobmondo not

4  only agreed that Plaintiffs were all asserting the remaining claims,

5  but also that Heimberg and Gomberg should be realigned as plaintiffs,

6  along with Spin Master. (Docket Nos. 257, 258.) Thus, even assuming

7  the Amended Complaint could be interpreted as Zobmondo asserts (which

8  the Court doubts), Zobmondo has always treated Heimberg and Gomberg as

9  plaintiffs on the remaining claims.[11]

10                                 **CONCLUSION**

11      The undisputed facts demonstrate that Heimberg and Gomberg have

12  standing to remain plaintiffs in this case and that they did not

13  assign away their rights to do so. The Court DENIES Zobmondo's motion

14  for summary judgment and, because the facts are undisputed, GRANTS

15  summary judgment to Plaintiffs. The parties are precluded from

16  raising this standing issue before the jury at trial.

17

18  **DATED:** **Aug. 22, 2011**        _____

19                                 **AUDREY B. COLLINS**
                                  **CHIEF UNITED STATES DISTRICT JUDGE**

20

21

22

23

24      [11]If necessary, the Court would also grant Plaintiffs leave to

25  amend the Complaint to clarify Heimberg and Gomberg's status as
    plaintiffs on the remaining claims. Zobmondo's delay in raising this

26  issue until now provides good cause to allow an amendment at this
    stage, and there is no prejudice to Zobmondo in light of its repeated

27  treatment of Heimberg and Gomberg as plaintiffs. See Fed. R. Civ. P.
    15(a), 16(b); Johnson v. Mammoth Recreation Inc., 975 F.2d 604, 609

28  (9th Cir. 1992).